IN THE CIRCUIT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

DORREL BRYAN
Petitioner

Vs.                                                Case No: 00-06022 CR-DMM

UNITED STATES OF AMERICA
Respondent

WRIT OF HABEAS CORPUS

Petitioner, pro-se hereby Affirms under penalty of perjury that the following statements are true.

1) The petitioner claims ineffective assistance of counsel, which meets the criteria as set forth in <u>Slack v. McDaniel 120 S.Ct 1595</u>; as to the second prong of Slack's test it will be shown to having been met, as to a demand for a Certificate of Appealability.

2) That there has been new evidence discovered, see (Exhibit A) Affidavit of Mr. Charles M. Llewlyn

3) The petitioner further claims that the ineffective assistance of counsel also meets the criteria as set forth by the Supreme Court in <u>Strickland v. Washington 466 U.S. 668, 104 S.Ct 2052 (1984)</u>

Please take notice, that the petitioner, Dorrel Bryan herein moves this Honorable Court to vacate his conviction in the case at hand or in the alternative prior to a final ruling on this motion, ordering a hearing regarding the ineffectiveness of trial counsel and the admissibility of the new evidence (Exhibit A), and for such other and further relief as the court may deem just and proper.

## Questions Presented

1. Did Mr. McKenna, Esq., petitioner Dorrel Bryan's trial counsel, meet the criteria for effective assistance of counsel as set forth by the Supreme Court in Strickland v. Washington 466 U.S. 668, 104 S.Ct. 2052 (1984)?

2. Did Mr. McKenna, Esq. comply even with the basic requirements of the 6th Amendment as stated in the U.S.C.A. Const Amendment. 6?

3. Does the new evidence, represent an irreversible error? (Statement of Mr. Charles M. Llewlyn (Exhibit A))

4. Did the lack of any investigation or taking of depositions by Mr. McKenna constitute irreversible harm?

## Factual Statements

On January 13, 2000 Petitioner Dorrel Bryan, detailed (custom cleaning inside and outside) of a van, driven to his shop by co-defendants Mr. Howard Bedford and Mr. Christopher Gilbern. This detailing was performed at Mr. Bryan's shop Romeo Tropical Touch in Fort Lauderdale, Florida. Upon completing the detailing of the van, Mr. Bedford asked Mr. Bryan to test drive the vehicle, stating that the engine had seized in Jacksonville Florida and that they had replaced the engine. (Mr. Bedford and Mr. Gilbern had driven down to Fort Lauderdale from Raleigh, North Carolina.) Mr. Bryan agreed after having just completed a hundred dollar detailing job. Whilst test driving the vehicle Mr. Bedford asked Mr. Bryan if he could drive him to The Sawgrass Mills Mall where he was to meet an acquaintance for a few minutes, and not being from the area was unacquainted with the area. Mr. Bryan agreed.

In the van were Mr. Bedford, Mr. Gilbern, Mr. Edward Dany, and Mr. Bryan who was driving. Once at the Mall Mr. Gilbern got out to talk to the people that he had an appointment with. The meeting taking longer than what Mr. Bryan was led to believe, he (Mr. Bryan) told Mr. Bedford he had to leave and get back to his shop. Mr. Bryan drove to the entrance to the Mall to make arrangements to go back to his shop. He was about to exit the van when he was arrested.

Mr. Bryan was charged with a drug conspiracy and possession of a controlled substance with intent to deliver.

Unbeknown to Mr. Bryan, Mr. Gilbern and Mr. Bedford had driven down to Fort Lauderdale, Florida from Raleigh, North Carolina to consummate a drug transaction involving 5 kilos of cocaine. Also unbeknown to Mr. Bryan, Mr. Gilbern and Mr. Bedford had secreted ninety eight thousand dollars in US currency in a hidden side panel inside the van.

Mr. Bryan hired Mr. Paul McKenna, Esq. to defend him against the charges filed against him. The petitioner met with Mr. McKenna three times before trial, at Mr. Bryan's insistence. Mr. Bryan pleaded his innocence to Mr. McKenna and asked him to use all legal tools to vigorously defend him against the charges filed in the case. Unfamiliar with the laws of the United States (Mr. Bryan is a Jamaican National and not familiar with the legal system), Mr. Bryan was assured by Mr. McKenna that he would defend him vigorously and conscienciously.

Mr. Bryan asked Mr. McKenna to conduct an investigation into the circumstances surrounding the arrest. Mr. Bryan asked Mr. McKenna to question the other occupants of the car and the arresting agents as to their knowledge of his participation in the conspiracy (Mr. Bryan was unaware of the legal term Taking of Depositions at

the time of his arrest, and having full faith in Mr. McKenna's assurances that he had Mr. Bryan's best interest in mind conceded his demands and was told in not so many words that Mr. McKenna had defended many of these cases and that he knew what he was doing.

Mr. Bryan went to trial on or about May 12, 2000 in the United Distric Court for the Southern District of Florida in Palm Beach, Florida. After a Jury Trial Mr. Bryan was found guilty of a lesser charge (see ~~senten~~ Trial transcript, Jury decision). Mr. Bryan was Sentenced on October 26, 2000 to a term of imprisonment of eighty seven months followed by three years probation, by the Hon. Donald M. Middlebrooks.

## ARGUMENT

### QUIS CUSTODIET IPSOS CUSTODES?
Who Guards the Guardians? Juvenal, (Satirae 6) (verses 346-350)

Although Mr. McKenna was hired to vigorously defend Mr. Bryan in the case at hand. He failed to do even the minimalist defense of Mr. Bryan. Mr. McKenna did not depose any one involved in the case, i.e. DEA agents, Confidential Informant, co-defendant, any possible character witnesses. Mr. McKenna did not keep the defendant informed or appraised of what was progressing or not progressing in the case. Mr. McKenna cease to function as Mr. Bryan's advocat in all but the most minimal way. Mr. McKenna was wholly unprepared to function as an advocate for Mr. Bryan, having not conducted any pre-trial depositions or performed an independent investigation of the case. (Mr. McKenna solely relied on the arresting agents reports) Mr. McKenna also did not involve, the person who was in a position to give suggestions and tell him of discrepencies in the

governments case Mr. McKenna only held one (1) conference with Mr. Bryan prior to trial, this conference lasted between 15-25 minutes and the only thing that Mr. McKenna conferred was a plea offer. The rest of the meeting was discussing fee payments. This meeting was also attended by Mr. Bryan's common law wife Ms Betty Bryan. At this meeting Mr Bryan reiterated his innocence and asked that Mr. McKenna do everything within his legal powers to defend him. Mr. Bryan also told Mr. McKenna of his desire, for Mr. McKenna to investigate the case and question the parties involved (Mr. Bryan was not aware of the legal term deposition or to depose) Mr. McKenna only said that he would take under consideration, Mr. McKenna's main focus was the payment of his fee. Mr. McKenna once again stated that he was an experienced trial attorney and knew what he was doing.

Mr. McKenna conducted no investigation or depose any of the parties involved in the case. Also Mr. McKenna never turned over to Mr. Bryan any of the Brady material that the gov't. presented to Mr. McKenna, nor a list of witnesses who would be called by the gov't. Mr. McKenna never provided Mr. Bryan with copies of any motions that the government filed nor a copy of his only motion filed. (A motion for dismissal, denied by trial judge) (Mr. McKenna also asked for a judgement of acquittal whilst the jury was deliberating, also denied by trial judge.)

Mr. McKenna basically filed no motions in the case, nor object to conflicting testimony of witnesses during trial. Mr. Bryan wanted to take the stand and Mr. McKenna, once again basically forbade Mr. Bryan from defending himself.

In point in fact as it now appears from the record before this court, Mr. McKenna could have presented a substantial amount of readably available evidence on the critical issue of

wether Mr. Bryan conspired with the co-defendants. To convict Mr. Bryan of conspiracy to possess with intent to distribute cocaine, Government was required to prove that Mr. Bryan entered into agreement with at least one other person for unlawful purpose; Comprehensive Drug Abuse Prevention and Control Act of 1970 § 406, 21 U.S.C.A § 846 and to convict Mr. Bryan of aiding and abetting attempt to possess with intent to distribute cocaine, Government was required to prove more than his association with co-defendants, or his mere knowledge of their transaction; Rather Government was required to prove some affirmative participation which at least encouraged perpetrator. United States v. Nunn, 940 F 2d 1128 (1991)

Mr. McKenna also denied Mr. Bryan's request to testify on his own behalf. Mr. Bryan not being versed in the law was not fully aware of his right to testify or to fire his attorney. Had he been made aware of his rights, Mr. Bryan would have dismissed his counsel Mr. McKenna in the least he would have filed motions to depose in pro-se. Mr. Bryan was not even aware that he could make a formal allegation of incompetence of counsel to the court. This was not an instance of mere dissatisfaction of trial counsels communications with Mr. Bryan or a disagreement of trial strategy, but one of specific witness development, competent trial preparation and basic due diligence.

In point in fact as, it now appears from the record before this court Mr. McKenna did not meet any of the requirements of effective assistance as stated in the U.S.C.A Const Amend 6. As stated by the U.S. Supreme Court in Strickland v. Washington 466 U.S. 668, 104 S.Ct. 2052 (1984) "As all Federal Courts of Appeals have now held, the proper standard for attorney performance is that of reasonably effective assistance. See Trapnell v. United States 752 F 2d at 151-152

In Strickland v Washington, 466 U.S. at 686, 1045 Ct at 2064 The court stated "The more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." See Powell v Alabama, 287 U.S. 45 at 68-69, 53 S.Ct 55, at 63-64.

Counsel can also deprive a defendant of the right to effective assistance simply by failing to render "adequate legal assistance." Cuyler v. Sullivan 466 U.S. 335 at 344, 100 S Ct. 1708 at 1716-1719.

Thus Mr. McKenna's performance was so deficient that Mr. Bryan was deprived of a fair trial, and had Mr McKenna even done a perfunctuary discovery, he would have discovered that Mr. Bryan was innocent of the charges. As evidence of this attached is an affidavit of Mr. Charles M. Llewlyn (Exhibit A) exculpating Mr Bryan from any involvement in the conspiracy. Mr Llewlyn is a charged co-defendant of Mr. Bryan, and was available to be deposed throughout all pre-trial dates. (Mr. Bedford, a principal in the conspiracy was not charged in the indictment and Mr. McKenna's failure to depose him also severely prejudiced Mr. Bryan's defense) Once again had Mr. McKenna even conducted a perfunctuary investigation all of these exculpatory evidence would have come to light. The defense of Mr. Bryan was severely affected and prejudiced thus affecting the outcome of the trial. Had a jury been presented with the exculpatory evidence and been also allowed to hear from Mr. Bryan, I am sure that the outcome of the trial would have been in Mr. Bryan's favor. Thus these failures constituted a violation of Mr. Bryan's Constitutional right to counsel as

provided by the U.S.C.A. Const Amend 6. This also meets the two prong requirement for issuing a Certificate of Appealability, as defined by the Supreme Court in Slack v. McDaniel, 529 U.S. 473, 120 S.Ct 1595 (2000) by showing a denial of Mr. Bryan's Constitutional right to counsel, U.S.C.A Const Amend 6, and that a Jurists of reason would find it debatable whether the petition states a valid claim of the denial of Constitutional right. Thus Mr. McKenna's representation or "lack of representation" thus met the courts standard for ineffective assistance of counsel as set forth in Strickland v. Washington 466 U.S. 668, 104 S.Ct. 2052.

In a carefully reasoned and well-documented the court of appeals for the 11th Circuit, has established specific requirements for assessing a claim of ineffective assistance of counsel based on a failure to investigate. First, a habeas petitioner must establish that counsel was ineffective. Second, the habeas "petitioner must show that ineffectiveness of counsel resulted in actual and substantial disadvantage to the course of his defense." Finally, "even if the defense suffered actual and substantial disadvantage, the state may show in the context of all evidence that it remains certain beyond a reasonable doubt that the outcome of the proceeding would not have been altered but for the ineffectiveness of counsel." Washington v. Strickland 673 F 2nd 879, 902 (5th Cir Annev 1982)

In the case at hand Mr. McKenna did not comply even with the basic requirements of the 6th Amendment and only put up a minimal defense at best. "If a defendants retained counsel does not provide the adequate legal assistance guaranteed by the sixth Amendment, a serious risk of injustice infects the trial itself. When the State obtains a conviction through such a trial, it is the State that unconstitutionally deprives the defendant of his liberty Cuyler v. Sullivan ___ U.S. 335 at 341-344, 100 S.Ct. 1708 at 1714-1717 (1980)

Thus Mr. McKenna having failed to investigate the circumstances of the crime, depose witnesses, participants (co-defendants), investigating and arresting agents. Thus prejudiced Mr. Bryan's defense, thus depriving him of a fair trial.

If the court is to be rendered helpless before the unchallenged travesty of justice that was committed on Mr. Bryan by his violation of his constitutional rights. The court must act to protect the uneducated and unfamiliar with the rules of law.

"Laws are dead letter without courts to expound and define their true meaning and operation."

— Alexander Hamilton, American Patriot.

As the record shows, had Mr. McKenna conducted, even a basic investigation. The evidence would have shown Mr. Bryan's innocence in the crimes charged. As Justice Marshall wrote (in the dissent) in Strickland v. Washington supra, "Every defendant is entitled to a trial in which his interests are vigorously and conscientiously advocated by an able lawyer. A proceeding in which the defendant does not receive meaningful assistance in meeting the forces of the State, in my opinion, constitute due process."

The central analysis in the present cause is the nature and source of the right to counsel afforded by the Sixth Amendment. The Supreme Court in Strickland v. Washington 466 U.S. 668, 104 S.Ct. 2052, set the proper standards for attorney performance, is that of reasonably effective assistance. Even using the low threshold set forth in the U.S.CA. Const Amend 6, Mr. McKenna's representation of Mr. Bryan could not be met, and Mr. McKenna's representation was deficient in the present cause.

In due course Mr. McKenna's representation of Mr. Bryan, was so deficient that it prejudiced the outcome of the trial. Had Mr. McKenna conducted the more basic requirements of a defense attorney, i.e. taking of depositions, filing pre-trial motions, and placed Mr. Bryan on the stand so that he could defend himself. The outcome of the case would have been different.

Mr. Bryan was a successful business owner, a member in good standing in the community, with close family ties and no prior criminal record. His testimony could have been a deciding factor in the case. It is well known that "A criminal trial concentrates society's resources at one time and place in order to decide within the limits of human fallibility the question of guilt or innocence." Engle v. Isaac 102 S.Ct at 1751.

Conclusion:

It is for the reasons enunciated herein that the petitioner requests that the court rule in his favor.

As the court also held in Strickland v. Washington 104 S.Ct 2052. "The proper standard for judging attorney performance is that of reasonably effective assistance considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."

"With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

The petitioner Dorrel Bryan has clearly met the criteria; as set forth by The Court in Strickland v. Washington 104 S.Ct. 2052 and that there was a clear violation of the 6th Amendment of the U.S. Constitution by ineffective assistance of counsel. Mr. Bryan also meets the criteria for the issuance of a certificate of Appealability as set forth by the court in Slack v. McDaniel 529 U.S. 473, 120 S.Ct. 1595.

The petitioner hereby requests that the court vacate the sentence imposed on him by the district courts and to rule on the admissibility of Exhibit A as new exculpatory evidence in the affirmative.

Dated: February 10, 2006
Fort Lauderdale, Florida.

Respectfully submitted,

Dorrel Bryan
Dorrel Bryan
Petitioner in pro-se
Reg. 50051016 8
Main Jail
PoBox 9356
Ft Lauderdale, Fl. 33310

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

DORREL BRYAN,

        Petitioner,

 -versus-

CASE NO. 05-60470

UNITED STATES OF AMERICA,

        Respondent.
_____/

**AFFIDAVIT OF CHARLES M. LLEWLYN**

    I the undersigned hereby declare under pains and penalty of perjury pursuant to Title 28 U.S.C. § 1746 that the below statements are true and correct to the best of my knowledge.

1. That I am known by the Court as Charles M. Llewlyn, federal prisoner #60206-004, presently residing at the Federal Correctional Institute, Jesup, Georgia 31599.

2. That I have information pertinent to these proceedings.

3. That I have never met Mr. Dorell Bryan, personally up until the time of our arrest on January 2000.

4. That I knew that Mr. Bryan owned and operated a car wash and would have a "fish-fry" at his place of location. Although I have supported that venture I have never spoken to Mr. Bryan.

5. That in January 2000, while at the Sawgrass Mall in Sunrise, Florida, I never saw Mr. Bryan engaged in any conversation with the informant Rohan Gordon.

6. That at no time did I see Mr. Bryan removed himself from the vehicle that he came in.

7. That Mr. Christopher Gilbourne informed me that he and Mr. Beckford had pooled their money together and travelled to Florida to purchase narcotics and that Mr. Bryan was only chauffering him around.

8. Mr. Gilbourne also informed me while we were in the West Palm Beach Detention Facility that he was amazed that the Government had release Beckford, as Beckford was his partner in crime in Raleigh-Durham, North Carolina.

9. That if called upon I am willing to testify to the above facts in any court proceedings under oath.

10. That the above statements are made freely and voluntary without promises or threaths or monetary benefits.

Upon pains and penalty of perjury I hereby affixed by signature hereto as conclusive proof of the truth of the matter asserted herein.

*Charles M. Llewlyn*
Charles M. Llewlyn
USM#60206-004
Jesup FCI
2680 Highway 301 South
Jesup, GA 31599

Executed this day July 30, 2005, and witness hereto by:

*Timothy Clark*
Timothy Clark

*Robert Abel*
Robert Abel